IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:16-CV-7-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| WENDY HUDSON GIDDENS, SETH ) | |
| HUDSON GIDDENS, JEREMY L. ) | |
| HUDSON, and JOSHUA L. HUDSON, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on plaintiff's motion for summary judgment. (DE 44). Defendants have failed to respond, and the time to respond has expired. In this posture, the issues raised are ripe for ruling. For the reasons stated below, plaintiff's motion for summary judgment is granted.

**STATEMENT OF THE CASE**

Plaintiff, the United States of American on behalf of its agency, the Farm Service Agency ("FSA"), commenced this action by filing complaint on January 11, 2016, seeking judgment for defendants' alleged default on six operating loans.[1] More specifically, plaintiff alleges defendants "applied for FSA loans claiming to farm as individuals conducting their own separate farming

---

[1] Also before this court are the following related cases: <u>United States of America v. Phillip Hudson</u>, case no. 5:17-CR-270-FL, filed on August 28, 2017 ("Hudson criminal matter") and <u>United States of America v. John Hudson Farms, Inc. et al.</u>, case no. 7:18-CV-7-FL, filed on January 10, 2018 ("civil fraud matter"). The debts and security agreements at issue in the instant case involve loans obtained from the FSA, which in the civil fraud matter, along with other government payments, are alleged to have been obtained fraudulently. Additionally, the conduct that forms the basis of the criminal information in the Hudson criminal matter relates to that defendant's participation in the alleged fraudulent scheme or device at issue in the civil fraud matter.

operations," received Farm Program loans, and are therefore indebted to the FSA. (Compl. (DE 1) ¶¶ 2, 4, 8, 11, 14). Each defendant secured one or more security agreements, and "[d]efendants have failed to make the payment on the said Notes as required therein, although due demand has been made upon them to do so." (Id. ¶¶ 5, 9, 12, 15, 18). Therefore, plaintiff has "elected and does hereby elect to declare the entire balance of the indebtedness due upon the said Notes, and Security Agreements, together with all amounts due for charges, and advances now due and payable." (Id. ¶18).

All defendants filed answer to complaint on March 11, 2016. On April 29, 2016, the court[2] entered scheduling order, providing for all dispositive motions to be filed by December 7, 2017. Following numerous motions and consent motions for extension of time, the parties were directed to file all dispositive motions by March 22, 2018. Plaintiff filed the instant motion for summary judgment on March 21, 2018. In support, plaintiff relies upon promissory notes, security agreements, financing statements, and affidavit of indebtedness as applicable to each defendant.

Defendants have filed no response.

## STATEMENT OF THE FACTS

The undisputed facts are as follows.

1. Defendant Wendy Giddens

On June 9, 2010, Wendy Giddens executed an FSA promissory note for a loan of money, numbered 44-01. (DE 47-1 at 1). Loan 44-01 to Wendy Giddens was for $200,000 at 2.875% per annum. (Id.). Wendy Giddens secured this loan by executing a security agreement on June 9, 2010, by a grant in collateral to FSA of 10 breeding bulls, 225 breeding cows, and 120 calves, in addition

---

[2] This case was originally assigned to United States District Judge Terrence W. Boyle, and was reassigned to United States District Judge Louise W. Flanagan on January 2, 2018.

to farm equipment, including an 8-row bedder, 8-row transplanter, and 8-row cultivator, as well as replacements, substitutions, additions, and accessions thereto. (DE 47-2). FSA filed a financing statement on June 17, 2010, thereby perfecting the June 20, 2010 security agreement in file no. 20100048141B and a continuation on June 25, 2015, in file no. 20150061188C, with the North Carolina Secretary of State. (DE 47-3; DE 47-4; see also DE 1-4).

The promissory note 44-01 executed by Wendy Giddens on June 9, 2010, fully matured and was due and payable as of November 30, 2017. (DE 47-27). The current amount outstanding principal on the promissory note 44-01 executed by Wendy Giddens as of November 30, 2017, is $119,295.83. (Id.). The amount of interest which accrued on Wendy Giddens' loan 44-01 through November 30, 2017 is $3,041.36. (Id.). The total amount delinquent for Wendy Giddens' loan 44-01, the principal outstanding plus interest through November 30, 2017, is $122,337.19. (Id.). The amount of daily interest accrual for Wendy Giddens' loan 44-01 is $9.3966. (Id.).

2. Defendant Seth Hudson Giddens

On February 11, 2010, Seth Hudson Giddens executed an FSA promissory note for a loan of money, numbered 44-01. (DE 47-5 at 1). Loan 44-01 to Seth Hudson Giddens was for $200,000 at 2.625% per annum. (Id.). Seth Hudson Giddens secured this loan by executing a security agreement on February 11, 2010, by a grant in collateral to FSA of farm equipment, including a tractor, five bulk barn structures, as well as replacements, substitutions, additions, and accessions thereto. (DE 47-6). FSA filed a financing statement on February 12, 2010, thereby perfecting the February 11, 2010 security agreement in file no. 2010011669H and a continuation on December 16, 2014, in file no. 20140115851K ,with the North Carolina Secretary of State. (DE 47-7; DE 47-8; see also DE 1-8).

3

The promissory note 44-01 executed by Seth Hudson Giddens on February 11, 2010, fully matured and was due and payable as of November 30, 2017. (DE 47-28). The current amount outstanding principal on the promissory note 44-01 executed by Seth Hudson Giddens as of November 30, 2017, is $107,456.14. (Id.). The amount of interest which accrued on Seth Hudson Giddens' loan 44-01 through November 30, 2017, is $1,901.08. (Id.). The total amount delinquent for Seth Hudson Giddens' loan 44-01, the principal outstanding plus interest through November 30, 2017, is $109,357.22. (Id.). The amount of daily interest accrual for Seth Hudson Giddens' loan 44-01 is $7.7280. (Id.).

3.   Defendant Jeremy L. Hudson

On March 11, 2009, Jeremy L. Hudson executed an FSA promissory note for a loan of money, numbered 44-03. (DE 47-9 at 1). Loan 44-03 to Jeremy L. Hudson was for $100,000 at 2.0% per annum. (Id.). On November 19, 2009, Jeremy L. Hudson executed an FSA promissory note for a loan of money, numbered 44-04. (DE 47-10 at 1). Loan 44-04 to Jeremy L. Hudson was for $100,000 at 2.875% per annum. (Id.).

Jeremy L. Hudson secured loan 44-03 by executing a security agreement on March 11, 2009 by a grant in collateral to FSA of all crops growing, or grown, or harvested in 618 acres of farm land specified in Johnston and Sampson Counties, in addition to farm equipment, including two John Deere tractors and a planter, as well as replacements, substitutions, additions and accessions thereto. (DE 47-11). Jeremy L. Hudson secured loan 44-04 by executing a security agreement on November 19, 2009, by a grant in collateral to FSA of all crops growing, or grown, or harvested in unspecified farmland, including all entitlements, benefits, and payments from all State and Federal farm programs, and all crop indemnity payments, arising from said crops. (DE 47-12).

4

FSA filed a financing statement on March 11, 2009, thereby perfecting the March 11, 2009 security agreement in file no. 20090018261M and a continuation on March 11, 2014, in file no. 20140021427E, with the North Carolina Secretary of State. (DE 47-13; DE 47-14). FSA filed a financing statement on November 20, 2009, thereby perfecting the November 19, 2009 security agreement in File No. 20090087471K and a continuation on October 30, 2014, in file no. 20140101554E, with the North Carolina Secretary of State. (DE 47-15; DE 47-16). FSA filed another financing statement on March 10, 2014, thereby perfecting the November 19, 2009 security agreement in file no. 20140021223J, with the North Carolina Secretary of State. (DE 47-17).

The promissory note 44-03 executed by Jeremy L. Hudson on March 11, 2009, fully matured and was due and payable as of November 30, 2017. (DE 47-30). The current amount outstanding principal on the promissory note 44-03 executed by Jeremy L. Hudson as of November 30, 2017, is $31,329.34. (Id.). The amount of interest which accrued on Jeremy L. Hudson's loan 44-03 through November 30, 2017, is $1,709.81. (Id.). The total amount delinquent for Jeremy L. Hudson's loan 44-03, the principal outstanding plus interest through November 30, 2017, is $33,039.15. (Id.). The amount of daily interest accrual for Jeremy L. Hudson's loan 44-03 is $1.7167. (Id.).

The promissory note 44-04 executed by Jeremy L. Hudson on November 19, 2009, fully matured and was due and payable as of November 30, 2017. (Id.). The current amount outstanding principal on the promissory note 44-04 executed by Jeremy L. Hudson as of November 30, 2017, is $56,878.21. (Id.). The amount of interest which accrued on Jeremy L. Hudson's loan 44-04 through November 30, 2017, is $1,102.12. (Id.). The total amount delinquent for Jeremy L. Hudson's loan 44-04, the principal outstanding plus interest through November 30, 2017, is

$57,980.33. (Id.). The amount of daily interest accrual for Jeremy L. Hudson's loan 44-04 is $4.4801. (Id.).

4.     Defendant Joshua L. Hudson

On March 11, 2009, Joshua L. Hudson executed an FSA promissory note for a loan of money, numbered 44-03. (DE 47-18 at 1). Loan 44-03 to Joshua L. Hudson was for $100,000 at 2.0% per annum. (Id.). On November 19, 2009, Joshua L. Hudson executed an FSA promissory note for a loan of money, numbered 44-04. (DE 47-19 at 1). Loan 44-04 to Joshua L. Hudson was for $100,000 at 2.875% per annum. (Id.).

Joshua L. Hudson secured loan 44-03 by executing a security agreement on March 11, 2009, by a grant in collateral to FSA of all crops growing, or grown, or harvested in 424 acres of farm land specified in Johnston, Nash, and Sampson Counties, in addition to farm equipment, including two John Deere tractors and a planter, as well as replacements, substitutions, additions, and accessions thereto. (DE 47-20). Joshua L. Hudson secured loan 44-04 by executing a security agreement on November 19, 2009, by a grant in collateral to FSA of farm equipment, including one and one-half John Deere tractors, a one-half planter, a one-half strip tiller, and four bulk barns, as well as replacements, substitutions, additions, and accessions thereto. (DE 47-21).

FSA filed a financing statement on March 11, 2009, thereby perfecting the March 11, 2009 security agreement in file no. 20090018205J and a continuation on March 11, 2014, in file no. 20140021437F, followed by another continuation on July 15, 2015, in file no. 20150068004H, with the North Carolina Secretary of State. (DE 47-22; DE 47-23). FSA filed a financing statement on November 20, 2009, thereby perfecting the November 19, 2009 security agreement in file no. 20090087476E and a continuation on October 30, 2014, in file no. 20140101558J, with the North

6

Carolina Secretary of State. (DE 47-24; DE 47-25). FSA filed another financing statement on March 10, 2014, thereby perfecting the November 19, 2009 security agreement in file no. 20140021225M and a continuation on July 15, 2015, in file no. 20150067980K, with the North Carolina Secretary of State. (DE 47-25; DE 47-26).

The promissory note 44-03 executed by Joshua L. Hudson on March 11, 2009, fully matured and was due and payable as of November 30, 2017. (DE 47-29). The current amount outstanding principal on the promissory note 44-03 executed by Joshua L. Hudson as of November 30, 2017, is $41,666.60. (Id.). The amount of interest which accrued on Joshua L. Hudson's loan 44-03 through November 30, 2017, is $2,273.96. (Id.). The total amount delinquent for Joshua L. Hudson's loan 44-03, the principal outstanding plus interest through November 30, 2017, is $43,940.56. (Id.). The amount of daily interest accrual for Joshua L. Hudson's loan 44-03 is $2.2831. (Id.).

The promissory note 44-04 executed by Joshua L. Hudson on November 19, 2009, fully matured and was due and payable as of November 30, 2017. (Id.). The current amount outstanding principal on the promissory note 44-04 executed by Joshua L. Hudson as of November 30, 2017, is $59,509.70. (Id.). The amount of interest which accrued on Joshua L. Hudson's loan 44-04 through November 30, 2017, is $1,129.66. (Id.). The total amount delinquent for Joshua L. Hudson's loan 44-04, the principal outstanding plus interest through November 30, 2017, is $60,639.36. (Id.). The amount of daily interest accrual for Joshua L. Hudson's loan 44-04 is $4.6874. (Id.).

5. Applicable Provisions of Promissory Notes and Security Agreements

Paragraph 21 of all promissory notes at issue signed by defendants provides as follows:

Failure to pay when due any debt evidenced by the notes shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the

7

Government at its option may declare all or any part of any such indebtedness immediately due and payable.

(DE 47-1, DE47-5, DE47-9, DE47-10, DE47-18, DE47-19).

Paragraphs 4(b) and (b)(1)-(2) of five of the security agreements at issue signed by defendants[3] provide that default shall exist under the security agreements "if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by the Security Agreements." (DE 47-2, DE47-6, DE47-11, DE47-20, DE47-21). Additionally, upon any default FSA may at its option "declare any unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable" and may "enter upon the premises" and take possession of the collateral "for the purpose of protecting or preserving the collateral" or "preparing or processing the collateral for sale," and "exercise any sale or other rights accorded by law." (DE 47-2, DE47-6, DE47-11, DE47-20, DE47-21).

Paragraph 4(c) of five of the security agreements provides that "[p]roceeds from the disposition of the collateral" shall be used first to satisfy the costs of taking possession of and selling the collateral, second "to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party," and third "to the satisfaction of indebtedness secured by this Security Agreement." (DE 47-2, DE47-6, DE47-11, DE47-20, DE47-21).

---

[3] As stated above, Jeremy L. Hudson secured loan 44-04 by executing a security agreement on November 19, 2009 by a grant in collateral to FSA of all crops growing, or grown, or harvested in unspecified farmland, including all entitlements, benefits, and payments from all State and Federal farm programs, and all crop indemnity payments, arising from said crops. (DE 47-12). However, this security agreement, and only this security agreement, does not contain the language from paragraphs 4(b) and 4(c) quoted above. (See id.). Also as stated above, the promissory note applicable to this loan does include the above quoted default language at paragraph 21. (See DE 47-10).

8

## COURT'S DISCUSSION

A.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.     Analysis

Plaintiff's claim that the defendants are in default on the six FSA loans is analyzed as a breach of contract claim. Under North Carolina law, the "elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Crosby v. City of Gastonia, 635 F.3d 634, 645 (4th Cir. 2011) (citations omitted). "Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." State v. Phillip Morris USA Inc., 363 N.C. 623, 631 (2009) (citations omitted). "It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument." Carolina Power & Light Co. v. Bowman, 229 N.C. 682, 693–94 (1949).

A plaintiff injured by breach is entitled to actual damages. See Perfecting Service Co. v. Product Dev. & Sales Co., 259 N.C. 400, 415 (1963)("For a breach of contract the injured party is entitled as compensation therefor[e] to be placed, insofar as this can be done by money, in the same

position he would have occupied if the contract had been performed.")). Actual damages are the fair compensation to be awarded to a person for any past, present, and future economic injury resulting from a breach of contract. Wilkinson v. Dunbar, 149 N.C. 20, 25 (1908).

In this case, plaintiff and defendants formed a legally binding contract when defendants signed the promissory notes. Defendants breached the contract when they failed to fully pay the loans. Defendants have remained in default on all six loans by failing to fulfill payment of loans upon demand. As defendants failed to make full payments on the loans upon demand, the amount of damages are the amount delinquent of each of the loans plus the interest on the unpaid balances.

Pursuant to five of the parties' security agreements, upon default plaintiff may enter upon defendants' premises and take possession of the collateral for the purpose of preparing or protecting the collateral for sale and exercise any sale or other rights provided by law. (DE 47-2, DE47-6, DE47-11, DE47-20, DE47-21). Additionally, the same security agreements provide that proceeds from the disposition of the collateral may be used to satisfy the costs of taking possession of and selling the collateral and to the satisfaction of indebtedness secured by the security agreements, absent prior security interest or liens in the collateral. (DE 47-2, DE47-6, DE47-11, DE47-20, DE47-21).

Plaintiff has requested, and upon the showing made is granted, the following relief:

1. Judgment awarded to plaintiff and against defendants in the following amounts:

    a. Wendy Giddens: The amount of $122,337.19, with interest accruing from November 30, 2017, until the date of judgment at a rate of $9.3966 per day until the date of judgment, and post-judgment interest at the legal rate;

    b. Seth Hudson Giddens: The amount $109,357.22, with interest accruing from

11

November 30, 2017, until the date of judgment at a rate of $7.7280 per day, and post-judgment interest at the legal rate;

    c.    Jeremy L. Hudson: The amount of $33,039.15, with interest accruing from November 30, 2017, until the date of judgment at a rate of $1.7167 per day and post-judgment interest at the legal rate; and

    d.    Jeremy L. Hudson: The amount of $57,980.33, with interest accruing from November 30, 2017, until the date of judgment at a rate of $4.4801 per day and post-judgment interest at the legal rate; and

    e.    Joshua L. Hudson: The amount of $43,940.56, with interest accruing from November 30, 2017, until the date of judgment at a rate of $2.2831 per day and post-judgment interest at the legal rate; and

    f.    Joshua L. Hudson: The amount of $60,639.36, with interest accruing from November 30, 2017, until the date of judgment at a rate of $4.6874 per day and post-judgment interest at the legal rate.

2.    That plaintiff's security agreements be foreclosed and that all right, title, and interest of defendants or any persons holding by, through, or under defendants, including any equity or redemption or rights of power, and rights of any junior lienholders, be forever barred in and to the collateral listed in the security agreements.

3.    That an order be issued directing the judicial sale of the personal property located as indicated in the security agreements in North Carolina, more fully described in the security agreements, (DE 47-2 at 2-3, DE47-6 at 2-3, DE47-11 at 2-3, DE47-20 at 2-3, DE47-21 at 2-3), by the United States Marshal for the Eastern District of North Carolina and that the United States

Marshal is to be permitted to peaceably enter upon the premises of defendants, or other location, to cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral listed in the security agreements, or to make equipment usable, for the purpose of protecting or preserving the collateral, or preparing or processing the collateral for sale.

4. The defendants are ordered to assemble the collateral and make it available to plaintiff at such time and place designated by the United States Marshal.

5. That upon foreclosure and possession, said collateral be sold by the United States Marshal in any commercially reasonable manner, including using a broker to assist in the sale of the property.

6. That in order to effect the said sale, all persons possessing the collateral described in the security agreements shall cease from using the collateral and make the collateral available to the United States Marshal.

7. That out of the proceeds of said sale, after payments of costs associated with the sale, plaintiff be paid the amount thereof on its claim above described.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (DE 44) is GRANTED, and plaintiff is awarded relief as set forth herein. The clerk is DIRECTED to close the case.

SO ORDERED, this the 9th day of July, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge